Please proceed. Good morning, Your Honours. My name is Richard Cuthbert, and I represent the appellant, Ms. Faith Dennis. Ms. Dennis was diagnosed with lupus at age 14. She was 25 at the time of her hearing in this case. At that time, the ALJ found her to have several impairments, including lupus, avascular necrosis of the ankles, fibromyalgia, stage 3 kidney disease, joint dysfunction, anemia, peripheral vascular disease, and borderline intellectual function. The only successful treatment of her lupus flares was long courses of prescribed Pregnizone. However, the Pregnizone itself became a problem, causing the avascular necrosis of her bones. Her treating rheumatologist at ECU, Dr. Nandan, supported her claim and opined that there were no good treatment options for her condition. The record shows that Dennis had 17 specialist appointments at VCU during the work week and the 22 months between the alleged onset date and the hearing date. The record also shows that Dennis had 14 unscheduled days at a hospital facility in those 22 months. This objectively totals more than 12 days per year receiving medical treatment during the period at issue. The VE in this case testified that seven to 10 days of work per year eliminates work at the unskilled level. And I argued both before and during the hearing that absenteeism would eliminate Dennis's ability to perform SGA. That can be found in the record at AR 65 and 297. However, the ALJ didn't even address absenteeism in the denial and despite the record determined that Dennis could maintain employment without missing any work due to absenteeism. So that leads to the key question in this case. Did the law require the ALJ to address absenteeism in the denial in the context of the facts of this case? And the answer is of course, yes, that's bedrock principle of appellate law. The commissioner must consider all the evidence and explain on the record the reasons for her findings, including the reasons for rejecting relevant evidence. A necessary predicate to engage in a substantial evidence review is a record for the basis of that ruling. And here the ALJ failed to address absenteeism in a way that allows this court any meaningful review. The ALJ gave no explanation, provided no basis for dismissing absenteeism in the denial. ALJ didn't address the claimant's arguments that absenteeism would rule out work. ALJ didn't address the BE's testimony that missing seven to 10 days of work per year would eliminate work. No mention that scheduled appointments were unnecessary or could easily be scheduled around employment. Counsel, you've got an ALJ and the appeals council and the district court all denying the claim. And to get a reversal after this string of denials, something would have had to have gone pretty wrong. And looking at the record as a whole here, let me just identify what I think are some of your obstacles. The vocational expert identified a large number of jobs that your client could have held with restrictions, but they were still sedentary jobs. There was no evidence, as I understand it, that your client had actually sought work. Your client did have an associate degree from high school, but there was no evidence that she was dismissed from any job because of partial absenteeism or that her appointments with occasional specialists rendered her unemployable in some way. But given the fact that the vocational expert has said that there are a large number of sedentary jobs she could hold, and given the fact that she has never sought work or never sought out those jobs that the vocational expert said she could hold, what are we supposed to do with that? Yes, your honor. Well, the way that the ALJ got to that evidence is that the ALJ relied on a hypothetical that didn't consider all the facts. Certainly, if the ALJ is allowed to cherry pick or ignore relevant evidence, then we can say substantial evidence supported the ALJ's decision. But here, there was evidence that both scheduled and unscheduled treatment rose above the minimum threshold that the VE set forth that would eliminate work. So, the VE said that missing seven to ten days of work per year would eliminate work. That's a little bit over a half a day a month. And if you look at the record, even if Ms. Dennis were to only have a half a day for this treatment at VCU, it would rise above that minimum threshold. So, Mr. Cooper, just so I understand your point is that when the vocational expert said that there were jobs in the economy that your client could do, he or she did not take into account the issue of absenteeism because the ALJ didn't prod that as part of the hypothetical. Somewhat. So, hypothetical three, the ALJ lists a bunch of criteria, limitations, but doesn't include absenteeism. And the VE says, well, yeah, if you don't have these limitations, you can work. And then the ALJ follows up with another question. And the ALJ says, well, what if the hypothetical claimant were to miss one day of work or more? And there the VE says, well, that will eliminate work. And the ALJ at that point was stuck, right? Because usually the ALJ... Right. And the problem is the ALJ didn't reconcile that conflict. They didn't, just ignored that. And it's very much just like in Crider versus Harris, where Crider versus Harris was a case where this court reversed. And there the VE, the ALJ posed a hypothetical question to the VE about vision. And the VE said that it would eliminate work and the ALJ just ignored it in the denial. And then that case went up on appeal and this court in 1989 said that the response of the vocational expert confirmed that Crider could not perform SGA, that no illusion is made to critical hypothetical question and answer is a strong indication that no reference was found possible, which would permit any conclusion other than that Crider should be awarded benefits he sought. And that's exactly what happened here, right? We made the argument before the hearing and my pre-hearing brief, we made the argument at the hearing that absenteeism would eliminate work and the ALJ just ignored the issue. And the ALJ ignored the issue because it was dispositive. If the ALJ found that Ms. Dennis was going to miss work, treating more than essentially half a day a month, according to the vocational testimony, she would have been found unemployable. So the district court in this case, and I know we reviewed this case de novo, but said that looking at the record in this case, that the sole expert that would support a finding of medical opinion indicated, well, there is an issue of absenteeism here, but left the explanation block blank. What do we have to do with that? Well, that was misleading somewhat because Dr. Nanden, the ALJ addressed Dr. Nanden's opinions at AR25. So the word absenteeism does appear twice in the denial. Once at AR25, when the ALJ talks about the 16 opinions of Dr. Nanden and lumps them all together and starts with the claimant has chronic lower extremity pain, this is Dr. Nanden, due to avascular bone necrosis, lupus, is unable to perform activities of daily living, would be unable to work even if the job were sedentary, would be absent, there it is, as a result of her impairments or treatment twice a month, would be off task, is unable to get through. And it goes on and on for 16 opinions. And the ALJ just dismisses all of those opinions in the four sentences that follow. And it does, in that last fourth sentence, the ALJ says something like, I'm dismissing these opinions because it's just a circle four form. But the circle four form was really only addressing listing 14.02 regarding lupus. It had nothing, the judge wasn't talking about the opinions found at 762 that contained the bulk of those opinions that the ALJ just dismissed. So I don't think the ALJ actually addressed absenteeism at all in the denial, despite what opposing counsel insinuates. Thank you. We thank you. I'll ask my colleagues if they have any further questions of you, if you have any further questions. Okay. All right. Well, let's hear from the other side here. Good morning, Your Honors. May it please the court. My name is John Lucier. I'm from the U.S. Attorney's Office here in Richmond, and I'm representing the Appellee Commissioner of Social Security. Your Honors, routine health management, even for a chronic condition, is not in itself incompatible with substantial gainful activity, and thus is not automatically disabling under the Social Security Act. Instead, a Social Security claimant bears the burden to prove that her routine medical treatment would actually cause work absence, sufficient to preclude work. Here, Dennis provided no evidence that her treatment was work preclusive. Her evidence, which is the existence of medical treatment during the relevant period, is insufficient by itself without further evidence that it would require her to be gone from work, to be absent from work. She did not offer testimony, other forms of evidence that she could not fit her regularly scheduled appointments around her work schedule, or that there were a work preclusive. The ALJ reviewed Dennis's medical records in their entirety for the entirety of the relevant period, which is March of 17 to March of 19, reviewed her inpatient treatment in July of 2018, reviewed the opinion of her rheumatologist, Dr. Nandan, who said that she would be absent from work more than twice a month, and found that the record showed that she could sustain full-time, unskilled, light work activity with a series of limitations that were set forth in the residual functional capacity. Can I ask about the B opinions and those various hypotheticals? With respect to the one about absenteeism, where the vocational expert, based on the hypothetical presented by the ALJ, said that Ms. Dennis could not be found, is your view that the evidence does not support the hypothetical, or what is it? Because it seems to me that, having made the point about absenteeism, the ALJ, at a minimum, should have addressed that in his or her decision. It does not appear that he or she did. Two points in response to that, Your Honor. First is the role of the VA in the hypothetical. An ALJ can ask two, three, four, however many hypotheticals to the VE as an ASVA thinks is appropriate at the hearing. There were four here, the third of which contained the limitations for, or excuse me, the fourth of which, the third was the one adopted by the ALJ. The fourth hypothetical contained the question from the ALJ, well, what about if this person is absent for a hypothetical? It is up to the ALJ, and it is the ALJ's factual finding, which hypothetical the ALJ ultimately adopts, and also which hypothetical ultimately reflects the limitations that the ALJ finds are appropriate at the RFC in step four. So that is for purposes of the VE's hypothetical in and of itself. The other, today, the other significance of that is that it does show that the ALJ, in fact, did consider absenteeism at the hearing, and also considered it in the decision that the ALJ... So can you point me to where in the ALJ's decision the judge rejected the factual basis for that fourth hypothetical? The ALJ, we know that the ALJ addressed absenteeism in the decision because the ALJ reviewed the existence of the treatment, reviewed all of the treatment, reviewed the inpatient treatment, specifically rejected the opinion of Dr. Nandan, which specifically had an absenteeism opinion in it, accepted the opinions of the two state agency physicians... Rejected on the grounds that the evidence didn't support absenteeism, or for some other reason? Rejected on the grounds... Rejected, founded... Rejected is the ALJ found it not persuasive. Dr. Nandan's opinion, not persuasive. So rejected it in full or in part, in some way discounted it in its entirety, including the absenteeism opinion, which was the only medical opinion that Dennis put forth that had an opinion on absenteeism. Before I forget this, the ALJ decision did make a factual mistake where he or she indicated that the evidence shows the claimant only had to be hospitalized once. That's not right. Once, there were two hospitalizations in July of 2018, Your Honor. They were separated by a day, two inpatient treatments from the 15th to the 17th, 15th and the 19th, and then again through the 27th. Okay. Well, let me go back to the question I asked earlier. Yes, Your Honor. Where the ALJ actually engaged with that hypothetical, the one that ultimately rejected with respect to absenteeism. The ALJ engaged with the hypothetical at the hearing, Your Honor, and then... In its decision. In its decision. The ALJ can decide which hypothetical to include in the decision. That's correct. And did not include that one, include the third hypothetical that did not include the absenteeism. Okay. So the question is, where's the finding in the record that it actually engaged? What's the basis for rejecting that final hypothetical? The ALJ did not put a basis for rejecting in the decision to put that, but that's the ALJ's decision to make as a matter of, in the first instance. But doesn't have to explain why. The ALJ has to explain overall in the decision why the ALJ found from the evidence to the ability to work, here the ability to work with certain limitations and so on, and make a logical bridge between the evidence and the decision. The decision as a whole has to do that for the final conclusion. There's no requirement that the ALJ specify in the decision, you know, I've asked hypothetical A, B, and C, and I've rejected hypothetical A, B, and C for reasons X, Y, and Z. The articulation standard is for the decision as a whole in the ultimate conclusion, from the evidence logical bridge to this person can engage and work with whatever limitations here, sedentary, light, and so on and so forth, with the RFC that's set forth in the decision. The ALJ has done that here, including with respect to absenteeism, because the evidence of absenteeism is the existence of treatment during the relevant period. And we know that the ALJ reviewed the treatment during the relevant period because the ALJ says so in the decision and goes through the records for the relevant period. And so we know that the evidence of the existence of treatment was in fact addressed by the ALJ because that is in the decision, Your Honor. Okay, so, but do you concede that there's no express conclusion about absenteeism or not? I, there's no conclusion in the sense of saying, uh, counsel argued at the administrative level that there would be absenteeism. I have considered that argument, but there's no requirement that the ALJ articulate that. And there's also counsel's argument is not evidence. But I guess, I mean, well, I mean, he points to evidence in the record, apparently, of a host of visits to doctors and hospitalizations, but it just strikes me as odd that the ALJ, at best, as you indicated, considered it, didn't consider it explicitly. That's the principal issue now. The principal issue at the administrative level was whether Ms. Dennis could work with certain limitations and was disabled for purposes of the Act, the Social Security Act, of course. The, in the principal issue at the administrative level was that the ALJ is the fact finder. The ALJ had the evidence that the ALJ had. The administrative record in this case, of course, had testimony from the hearing, had testimony from Ms. Dennis, had testimony from the VE, and it was up to the ALJ to make factual findings at that level, and the ALJ did so and was affirmed at the district court, of course, as your honor knows. That, whether someone will be absent from work for a certain period of time is a factual finding. And here, the ALJ reviewed her treatment, reviewed, and at this level, it's a list. Counsel has presented a list of treatment over two years. All of that was before the ALJ. We know that the ALJ reviewed it, and the ALJ took that into account in making the factual findings that Ms. Dennis had certain limitations, and that did not include that she was going to be absent so much from work that it would be precluded under the Social Security Act. And that's consistent with the standard that this court and others who have looked at this issue have said, and that is a list of treatments or the existence of treatments in and of itself is not sufficient. There needs to be further evidence that the claimant will, in fact, be absent from work. So, as here, when someone is relying on, when a claimant is relying on X number of days, in this case, there are 30-ish days of treatment of all kinds, that includes the inpatient treatment, that saying there have been 30 days of treatment over a two-year period would mean that I am precluded from work is not enough without showing that you would actually miss those 30 days or some number below that. That evidence was before the ALJ. The ALJ considered that evidence. It is supported by substantial evidence, as the district court found, and this court should affirm. Thank you, Your Honor. All right, let's hear from you, Enroe Bidel. Thank you, Your Honor. The ALJ ignored absenteeism in the denial. It's pretty clear. The commissioner, you can tell from their argument, does not say that the ALJ sufficiently addressed absenteeism because they don't. And if the ALJ fails to consider relevant evidence, a reviewing court can't determine that the ALJ's decision is supported by substantial evidence. I mean, that's pretty basic. And there's no comeback from this failure. I made this argument in our pre-hearing brief that absenteeism would rule out work. I made this argument during the hearing, and the judge ignored it. And I alluded to that before because a lot of times you'll get the testimonials say, oh, well, if the claimant misses more than a day of work a month, then it would eliminate work. And I think that's what the ALJ was looking for. But that's not what the ALJ got. The ALJ got something the ALJ couldn't work with. And so the ALJ ignored it. And it was that error of ignoring relevant evidence that infected all the other decisions, affected the RFC determination, and it affected the hypothetical because all those are based on providing a basis. Are the hypotheticals in these cases necessarily based on what the ALJ found as evidence? Because I suppose your colleague on the other side suggests that the ALJ can present all manner of hypotheticals and ultimately find that the evidence simply doesn't support a hypothetical. Pozenkow's right. The ALJs typically make lots of hypotheticals and on the tail end choose which one they think best fits the facts. But you can't ignore relevant evidence to come to that conclusion. I think we know that in order for a vocational expert's opinion to be relevant or helpful, it must be based upon the consideration of all the records, right? So you get a cherry-picked evidence and say that the hypothetical is supported by substantial evidence. You need to take everything into account. The ALJ didn't. I would like to address a couple of points that opposing counsel made. They said that, oh, well, a list is not automatically disabling. We provided more than a list. We know the type of treatment. We know the location of the treatment. We know the frequency of the treatment. These are all specialist appointments, at least the scheduled ones were, at VCU. Common sense tells us you can't schedule that sort of stuff on nights or weekends. None of us here have scheduled a specialist appointment at 7 p.m. It just doesn't happen. You can't teleport from French George up to VCU and back. You're going to miss some work. There was going to be some amount of absenteeism tied in with this in the ALJ morning. Meijer v. Astro was a case for circuit where this court said that the ALJ must consider the effect of ongoing scheduled appointments on a claimant's ability to remain employed. Now, the frequency was higher there. That was 5 to 10 physical therapy appointments over the course of more than a year. But physical therapy appointments are more accessible, right? There's usually a place 5 to 10 minutes from wherever you are. And there's a little bit more flexibility. It's not quite as structured as trying to schedule with a specialist appointment. But the fact remains that this court said that an ALJ must consider, this was in footnote three to Meijer v. Astro, the effect of ongoing scheduled appointments. And that's what we were arguing here in the ALJ. Absenteeism only appears twice. It appears in passing when the judge loops in the discussion about Dr. Nanden, but doesn't provide any specific analysis with respect to basis. And then on the last page, when it talks about kind of canned language about the VE, its testimony was consistent with the dictionary of occupational titles, except for absenteeism using a cane and something else. But there was no basis or analysis in passing. I would say that I would ask your honors to look at Kreider v. Harris again, because it's on point with what's going on here. The ALJ got an answer she didn't know what to do with from the VE and ignored it. In Kreider v. Harris, this court said that no allusion is made to the critical hypothetical. That one was about vision. This one was about absenteeism. And I would add, and argument posed by Dennis. Our argument in this case was absenteeism moving at work. It's a strong indication that no reference was found possible, which would permit any conclusion other than that Dennis should be awarded benefits. It's objectively in the record. And even if she were to miss half days, it would still rise above that threshold tolerance provided by the VE. Thank you, your honors. Well, we thank you. And we appreciate both of your arguments in this case. And we'd be prepared to move into our final case this morning.
judges: J. Harvie Wilkinson III, Albert Diaz, Max O. Cogburn Jr.